1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CORECIA DAVIS,                              No.  2:16-cv-00890 JAM AC

12                  Plaintiff,

13         v.                                    ORDER AND

14   WELLS FARGO, N.A.,                          FINDINGS AND RECOMMENDATIONS

15                  Defendant.

16

17         Defendant's motion to dismiss, ECF No. 15, and plaintiff's motion for a preliminary

18   injunction, ECF No. 16, came on for hearing before the undersigned on October 19, 2016.

19   Plaintiff appeared in pro se, and attorney Leigh Curran appeared on behalf of Wells Fargo.  For

20   the reasons that follow, the court recommends that the motion to dismiss be granted in part and

21   denied in part, and that the motion for a preliminary injunction be granted.  The court will also set

22   this matter for a mandatory settlement conference, to be scheduled promptly upon the assigned

23   direct judge's ruling on these Findings and Recommendations.

24                          PROCEDURAL BACKGROUND

25         This case involves the pending foreclosure of residential property located in Auburn,

26   California.  Homeowner and plaintiff Corecia Davis ("plaintiff" or "Davis") sued defendant Wells

27   Fargo, N.A. ("Wells Fargo" or "the Bank") for negligence and fraud in Sacramento Superior

28

                                         1

1    Court on April 15, 2016.  ECF No. 1 at 10.[1]  On April 28, 2016, the Bank removed the matter

2    based on diversity jurisdiction.  ECF No. 1 at 1.  Plaintiff subsequently filed a First Amended

3    Complaint ("FAC"), ECF No. 12, and a Motion for Preliminary Injunction, ECF No. 16.

4            The FAC asserts 14 causes of action: (1) negligence; (2) unjust enrichment; (3) violations

5    of the Fair Debt Collection Practices Act; (4) violation of the Real Estate Settlement Procedures

6    Act; (5) violation of Cal. Business and Professions Code 17200; (6) fraud; (7) a claim seeking to

7    void or cancel assignment of Deed of Trust; (8) wrongful foreclosure; (9) breach of the implied

8    covenant of good faith and fair dealing; (10) quiet title; (11) slander of title; (12) promissory

9    estoppel; (13) negligent misrepresentation; and (14) invasion of privacy.  Defendant moved to

10   dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  ECF 15.

11   Defendant also filed a Request for Judicial Notice of documents to be considered by this Court in

12   deciding the Motion.  ECF 14.

13                                    REQUEST FOR JUDICIAL NOTICE

14   I.        Defendant's Request

15           Defendants seek judicial notice of the following documents:

16           (1) the fixed Rate Mortgage Note executed between Stephen Michael Woo (plaintiff's

17           then-husband) and Wachovia Mortgage, FSB, dated February 15, 2008 (Request for

18           Judicial Notice ("RJN") Exh. 1[2]);

19           (2) the Deed of Trust Recorded by Wachovia Mortgage, FSB with the Placer County

20           Recorder on February 22, 2008 (id. Exh. 2);

21           (3) a Certificate of Corporate Existence of World Savings Bank, FSB, issued by the Office

22           of Thrift Supervision on April 21, 2006 ( id. Exh. 3);

23           (4) a letter recognizing the name change of World Savings Bank, FSB to Wachovia

24           Mortgage, issued by the Office of Thrift Supervision on November 19, 2007, id. Exh. 4;

25           (5) a certification of the conversion of Wachovia Mortgage, FSB, to a national bank with

26

27   _____
     [1]  Citations to court documents refer to the page numbers assigned by the court's electronic
     docketing system and not those assigned by the parties.

28   [2]  The documents submitted for judicial notice are found at ECF No. 14-1.

the name Wells Fargo Bank Southwest, issued by the Comptroller of the Currency on November 1, 2009 (id. Exh. 5);

(6) a Substitution of Trustee in which Wachovia Mortgage, FSB, its successors and/or assignees, substituted NBS Default Services, LLC, as Trustee for the property at issue here, dated November 12, 2015 (id. Exh. 6);

(7) an opinion letter from the General Counsel of the Federal Home Loan Bank Board, dated August 13, 1985 and published at 1985 FHLBB LEXIS 178, regarding the scope of federal preemption (id. Exh. 7);

(8) an opinion letter from the Chief Counsel of the Office of Thrift Supervision, dated July 22, 2003 and published at 2003 OTS LEXIS 6, regarding preemption of the New Jersey Predatory Lending Act (id. Exh. 8).

## II.   Legal Standards

The court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); United States v. Bernal–Obeso, 989 F.2d 331, 333 (9th Cir. 1993).  Facts subject to judicial notice may be considered by a court on a motion to dismiss.  In re Russell, 76 F.3d 242, 244 (9th Cir. 1996). In actions arising from mortgage disputes, courts may take judicial notice of the deed of trust and other documents pertaining to the loan.  Kelley v. Mortgage Electronic Registration Systems, Inc., 642 F.Supp.2d 1048, 1052–53 (N.D. Cal. 2009).  A court may also take "judicial notice of matters of public record outside the pleadings."  Indemnity Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

## III.   Discussion

The court has examined each of the exhibits for which judicial notice is requested, and finds that defendant's Exhibits 1 through 6 are suitable for judicial notice as matters of public record outside of the pleadings.  See Fed. R. Evid. 201(b).  These documents pertain directly to the property and loan at issue, and therefore constitute relevant historical facts.  Exhibits 7 and 8, however, are legal opinions from regulatory agencies.  While the existence of these documents can accurately and readily be determined, the factual assertions and legal analyses they contain

1  are not proper subjects of judicial notice.  Because the existence of these opinion letters and the

2  fact that they were issued are not relevant to the issues before the court, the request for judicial

3  notice will be denied as to Exhibits 7 and 8.  See Ruiz v. City of Santa Maria, 160 F.3d 543, 548

4  n.13 (9th Cir. 1998) (judicial notice is inappropriate where the facts to be noticed are not relevant

5  to the disposition of the issues before the court).  The court does, however, consider these opinion

6  letters as proffered persuasive authority to the extent that defendant relies on them to support its

7  preemption argument, which is discussed below.

8                                          MOTION TO DISMISS

9        I.      Legal Standards

10              A.  Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

11        The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the

12  Complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal

13  can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

14  under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

15  1990).

16        In order to survive dismissal for failure to state a claim, a complaint must contain more

17  than a "formulaic recitation of the elements of a cause of action;" it must contain factual

18  allegations sufficient to "raise a right to relief above the speculative level."  Bell Atlantic Corp. v.

19  Twombly, 550 U.S. 544, 555 (2007).  It is insufficient for the pleading to contain a statement of

20  facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of

21  action.  Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36

22  (3d ed. 2004)).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to

23  'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

24  (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads

25  factual content that allows the court to draw the reasonable inference that the defendant is liable

26  for the misconduct alleged."  Id.

27        In reviewing a complaint under this standard, the court "must accept as true all of the

28  factual allegations contained in the complaint," construe those allegations in the light most

4

favorable to the plaintiff, and resolve all doubts in the plaintiffs' favor.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Von Saher v. Norton Simon Museum of Art at Pasadena</u>, 592 F.3d 954, 960 (9th Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 3055 (2011); <u>Hebbe v. Pliler</u>, 627 F.3d 338, 340 (9th Cir. 2010).  However, the court need not accept as true, legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice.  <u>See</u> <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981); <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001), as amended, 275 F.3d 1187.

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  Pro se complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  <u>Nordstrom v. Ryan</u>, 762 F.3d 903, 908 (9th Cir. 2014).  A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  <u>See</u> <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448 (9th Cir. 1987).

B.  <u>Requirements of Federal Rule of Civil Procedure 9(b)</u>

Rule 9 establishes heightened pleadings standards for "special matters" including fraud claims.  Specifically, the rule states as follows:

> **Fraud or Mistake; Conditions of Mind.**  In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge and other conditions of a person's mind may be alleged generally.

Rule 9(b), Fed. R. Civ. Proc.

A pleading satisfies Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.  <u>Neubronner v. Milken</u>, 6 F.3d 666, 671-72 (9th Cir. 1993).  Accordingly, "[t]he complaint must specify such facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity."  <u>Id.</u> at 672.  In other words, a fraud claim must specifically identify "the who, what, when, where, and how" of the misconduct charged.  <u>Cooper v. Pickett</u>, 137 F.3d 616, 627 (9th Cir. 1997).  Moreover, in a fraud action brought against a corporation under California law, a plaintiff must

5

"allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."  Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157 (1991).

II.      The First Amended Complaint

The property at issue, a home in Auburn, California, was purchased in May 2004 for $540,000 and was encumbered by a First Deed of Trust in the amount of $432,000 with Provident Savings Bank, FSB.  Id. at ¶ 9.  In September 2005 the property was refinanced with a new loan amount of $543,239 from Centex Home Equity Company, LLC.  FAC (ECF No. 12) at ¶ 10. When the housing market went into a slump in 2007, plaintiff and her then-husband Stephen Woo engaged in a year-long effort to modify the loan, which was finally accomplished on February 15, 2008 when a new Fixed Rate Mortgage Note was entered between Mr. Woo and Wachovia Mortgage, FSB, in the amount of $555,000.  Id. at ¶¶ 11, 12.  The accompanying Deed of Trust, which plaintiff alleges to be both modifiable and assumable, is provided as Attachment A to the FAC.

On May 20, 2011, Stephen Woo quitclaimed the property to plaintiff as part of a divorce settlement, although he remained in residence there until July 2013 when he vacated the property and stopped making mortgage payments.  Id. at ¶¶ 16-17, 19.  Plaintiff alleges she has been working with Wells Fargo in an effort to obtain a loan modification from July 2013 until her original complaint was filed.  Id. ¶ 20.

In 2013 plaintiff was assigned to a home modification employee at Wells Fargo, Jesse Scott, id. at ¶ 21, but was unsuccessful in her efforts with Mr. Scott and unnamed others to achieve either assumption of or modification to the loan.  As a result she vacated the subject property in 2014 and it became a rental property.  Id. at ¶ 22.  Plaintiff would not have vacated the property had she been advised that assumption was an option if she remained in the residence. ¶ 54.

In 2013 and 2014 plaintiff dealt with Michael Wulff in home modification, id. at ¶ 23, who incorrectly or falsely told her the bank could communicate only with Mr. Woo.  Id. at ¶ 24. On December 15, 2014 Davis apparently acquired an authorization from Mr. Woo which

informed Wells Fargo that the Bank had his permission to contact plaintiff about the loan but, since the Bank had mistakenly recorded plaintiff's name to be "Patricia" in its records, employees with whom she spoke continued to insist they could not provide her with information.  Id. at ¶¶ 26-27.  Once Wells Fargo acknowledged plaintiff was entitled to receive information, unnamed employees asserted the loan was not assumable, and, alternatively, that even if it were assumable the mortgage had to be paid current before assumption would be considered, and that the amount of information they could give plaintiff was "limited," all of which assertions are alleged to be false.  Id. at ¶¶ 28-31.  Plaintiff discovered that a Notice of Default had been recorded on the property on December 18, 2015 without any notice given to her as the sole titleholder on the property, which she alleges renders the filing "fraudulent."  Id. at ¶ 32.

In February 2016, Davis was "told" that Wells Fargo could deal with her effort to modify the loan without Mr. Woo's involvement, and she provided requested financial information including tax returns, a contribution letter, pay stubs and other unspecified material she transmitted to the bank by facsimile.  Id. at ¶ 34.  On February 29, 2015 plaintiff faxed defendant asking that they cease foreclosure activity and complete a Qualified Written Request for documents, but there was no compliance with either request.  Id. at ¶ 35.

Plaintiff recounts subsequent telephone conversations with various Wells Fargo employees on specific dates.  Those employees are identified as "Eboniece," who told her the home was in active foreclosure but no sale date had been set, verified plaintiff was interested in loss mitigation and modification options, and confirmed her financial documents had been received on February 29 and March 1, 2015, and then passed her along to another Bank employee, "Michele."  Id. at ¶ 36.  Michelle informed plaintiff that the file was reviewed on March 1 and there were questions about the divorce decree, but acknowledged the quitclaim deed executed by Mr. Woo was in the file.  Id. at ¶ 37.

On March 11, 2016, Davis was passed around between Bank employees "LaToya," who verified there was no sale date on the house and that Michael Wulff was her home preservation specialist, "Debra" and "Louisa Mogra" in the re-entry department.  Plaintiff was told to call back in 48-72 hours, and the tenor of the request led her to believe she was being considered for a

modification.  Id. at ¶¶ 38.  On March 14 and 15, 2016, Stephen Woo received conflicting letters

from Wells Fargo first asserting that they could not proceed with his request for mortgage

assistance, and then stating that once his application and the documents requested of him were

received they would begin processing his application.  Id. at ¶¶ 39-40.

On March 15, 2016, plaintiff spoke with "Nkia" who advised that the file was closed in

February for failure to provide documentation, and "Cynthia" who told her the home was in

active foreclosure and she needed to talk to the re-entry department -- but "Michael" in that

department told her she needed to talk to the assumption department, and "Victoria" in the

assumption department referred her to the refinance department.  When plaintiff connected with

employee Jeanette Skeet in the refinance department, she was told that Mr. Woo had to be

involved and needed to provide his tax returns and proof of income.  Id. at ¶¶ 40-44.

On March 24, 2016, Mr. Woo got a letter from Michael Wulff asking for his information,

and plaintiff talked to "Alicia" who informed her that Wells Fargo had recorded receipt of phone

calls from her on February 11, March 8 and March 15, 2015, and advised plaintiff that she could

assume the loan or get outside refinancing.  Id. at ¶¶ 47-48.  On March 25, 2016, Mr. Woo got

another letter from the Bank advising that by "completing the assumption and modification

process" he would be adding plaintiff to the existing mortgage to take over the monthly

payments.  Id. at ¶ 50.

On or about March 28, 2016, plaintiff got a letter from Jeannette Skeet dated March 23,

2016 indicating the same alternatives, apologizing for incorrect information that had been

provided to her earlier about the need for Mr. Woo's involvement in the process, and referring her

to a new preservation specialist, Annie Meza.  Id. at 51.  When Davis and Meza spoke on April 1,

2016, Davis was told she could assume the loan but only if she was the occupant of the home, and

that she had until April 25, 2016 to submit a complete packet of information or the home would

be sold on May 3, 2016.  Id. at ¶ 52.  Plaintiff contends that she had earlier moved out and rented

the house in reliance on the contrary and incorrect information she had received previously from

Wells Fargo employees.  Id. at ¶¶ 53-54.  On April 8, 2016, Mr. Woo got a letter from the Bank

telling him he had been removed from the HAMP review process having withdrawn his request,

1  which Davis alleges he had not done.  Id. at ¶ 57.

2        On April 14, 2016, Ms. Davis spoke with "Jennica" who told her she did not qualify for

3  assumption, then Ms. Meza who told her that was bad information.  Id. at ¶ 62.  At this point

4  Davis filed a complaint with the Bureau of Real Estate.  Id. at ¶ 64.  Ms. Davis filed her state

5  court complaint on April 15, 2016 and on April 18, 2016 the Placer County Superior Court issued

6  a TRO to prevent sale of the property which Order plaintiff faxed to Wells Fargo on April 18.

7  The property remained on the sale calendar, however, on April 19.  Id. at ¶¶ 66-69.  Plaintiff

8  spoke to employees "Vonn," "Evelyn," and "Brent" on April 20, while the sale date remained of

9  record, and was finally told by "Christina Moss" that she needed to bring the loan current.  Id. at ¶

10  70-72.

11        The litany of contacts, all providing different information, continued as Davis spoke with

12  employees Christina Moss and Annie Meza on April 21, id. at ¶¶ 73-74.  Also on April 21, 2016,

13  Wells Fargo Senior Vice President Leesa Whitt-Potter wrote to Stephen Woo indicating the Bank

14  was reviewing an inquiry from Davis and it would be completed by May 2, 2015.  Id. at ¶ 75.  On

15  May 16, Davis received a letter from employee Paul Gruber informing her that the Bank hoped to

16  have the results of her "inquiry" completed by May 16 or May 31, 2015.  Id. at ¶ 76.  Finally, on

17  May 24, 2016, Mr. Woo received a letter identifying Michael Wolff as the Home Preservation

18  Specialist yet again which, plaintiff alleges, should have put the matter in modification review

19  and suspended all foreclosure activity.  Id. at ¶ 77.

20        In addition to this course of communication and miscommunication regarding plaintiff's

21  efforts to assume and modify the home loan, the FAC alleges that Wells Fargo improperly

22  divulged plaintiff's personal information to her tenant.  The FAC states that plaintiff's property

23  management agent received an email on March 18, 2016 from Randy Robinson, who was living

24  in the subject property as a renter, in which Robinson indicated that he had a lot of personal

25  information about plaintiff.  Id. at ¶ 46.  On April 7, 2016, plaintiff got a copy of the email from

26  Robinson and, and concluded after reading it that he did, indeed, have confidential information –

27  the same confidential information that plaintiff had submitted to defendant in her efforts to

28  achieve modification.  Id. at ¶ 56.  On April 11, 2016, Robinson informed plaintiff's agent that his

1    cousin worked in the fraud department at Wells Fargo.  Id. at ¶ 58.  On April 14, 2016, having

2    reason to believe that Robinson had obtained information regarding her taxes, her place of

3    employment, her income, and facts about her divorce that could only have been acquired from

4    Wells Fargo, plaintiff called Wells Fargo employee Lucas Varley who told her it would not be

5    possible to identify the source of that information leak.  Id. at ¶¶ 60-61.

6         III.    Discussion

7              A.  HOLA Preemption

8         Defendant contends first and foremost that the FAC must be dismissed because all of

9    plaintiff's claims are preempted by the Home Owners Loan Act ("HOLA"), 12 U.S.C. §§ 1461-

10   1470.  HOLA was enacted by Congress in 1933 to charter and regulate savings associations at a

11   time when a record number of home loans were in default and many of the savings associations

12   were insolvent.  "HOLA was designed to restore public confidence by creating a nationwide

13   system of federal savings and loan associations to be centrally regulated according to nationwide

14   'best practices.'"  Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1004 (9th Cir. 2008) (quoting

15   Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 160-161 (1982)).  The regulatory scheme

16   developed by the Office of Thrift Supervision pursuant to HOLA includes an express preemption

17   provision, 12 C.F.R. § 560.2(a), that has the force of law.  Id.  It provides that the HOLA

18   regulations occupy "the entire filed of lending regulation for federal savings associations," and

19   therefore generally preempt state law.  12 C.F.R. § 560.2(a).  Pursuant to this rule, state law

20   claims including negligence and fraud are preempted and must be dismissed when brought

21   against a federal savings association ("FSA").

22        Wells Fargo is not a federal savings association, it is a national bank.  As such, it is not

23   regulated or directly protected by HOLA.  Defendant argues that HOLA preemption nonetheless

24   applies because the loan at issue originated with an FSA.[3]  Although the Ninth Circuit has held in

25   general terms that HOLA preemption applies when a loan originates with an FSA and is later

26   acquired by another type of financial institution, Silvas, 514 F.3d at 1004, it has not addressed the

27

28   _____
     [3]  As previously noted, the loan originated with Wachovia Mortgage, FSB.

specific question whether a non-FSA that acquires a loan from an FSA enjoys HOLA protections for its own post-acquisition conduct.

Many district courts have applied preemption to claims against successor entities when the loan at issue was originally made by an FSA.  See, e.g., Kenery v. Wells Fargo, N.A., 2014 U.S. Dist. LEXIS 4672, *11 (N.D. Cal. Jan. 14, 2014); Marquez v. Wells Fargo, N.A., 2013 U.S. Dist. LEXIS 131364, *11 (N.D. Cal. Sept. 13, 2013).  A growing number of courts, however, have found that HOLA preemption applies after an FSA's merger with a national bank only to claims arising from the conduct of the FSA.  See, e.g., Penermon v. Wells Fargo Bank, N.A., 47 F. Supp. 3d 982, 995 (N.D. Cal. June 11, 2014); Rijhwani v. Wells Fargo Home Mortgage, Inc., 2014 U.S. Dist. LEXIS 27416 at *7 (N.D. Cal. March 3, 2014); Narvasa v. U.S. Bancorp, 2016 U.S. Dist. LEXIS 98991 at *9-10 (E.D. Cal. July 27, 2016).[4]  The undersigned finds the Penermon, Rijhwani and Narvasa line of cases to be persuasive.

HOLA was intended to ensure the stability of federal savings and loan associations, not to protect national banks from liability for their own conduct.  As the district court in Penermon explained:

> HOLA concerns laws "affecting the operations . . . of federal savings associations, with an aim to . . . facilitate the safe and sound operation" of those associations.  12 C.F.R. § 560.2(a). . . . [T]he reason for HOLA's enactment was to encourage lending and to ensure stability in federal savings loans. . . . HOLA was not enacted to provide a defense to actions that would otherwise violate consumer protection laws. Moreover, it is unlikely that HOLA contemplated the subsequent mortgage crisis and the resulting mergers of federal savings banks into national banks or loan servicing as it exists today.

Penermon, 47 F. Supp. 3d at 995.

---

[4]  See also Valtierra v. Wells Fargo Bank, N.A., 2011 U.S. Dist. LEXIS 18669 (E.D. Cal. Feb. 10, 2011); Gerber v. Wells Fargo Bank, N.A., 2012 U.S. Dist. LEXIS 15860 (D. Ariz. Feb. 9, 2012); Rhue v. Wells Fargo Home Mortgage, Inc., 2012 U.S. Dist. LEXIS 188384 (C.D. Cal. Nov. 27, 2012); Rodriguez v. U.S. Bank Nat. Ass'n, 2012 U.S. Dist. LEXIS 77228 (N.D. Cal. June 4, 2012); Cerezo v. Wells Fargo Bank, 2013 U.S. Dist. LEXIS 110755 (N.D. Cal. Aug. 6, 2013); Leghorn v. Wells Fargo Bank, N.A., 950 F. Supp. 2d 1093, 1107-08 (N.D. Cal. 2013); Hopkins v. Wells Fargo Bank, N.A., 2013 U.S. Dist. LEXIS 72803 (E.D. Cal. May 22, 2013); Pimentel v. Wells Fargo, 2015 U.S. Dist. LEXIS 62913 (N.D. Cal. May 7, 2015).

1   The cases adopting a portability model of preemption follow the general principle that
2   liabilities and defenses of the original lender travel with the loan and apply to its successor owner.
3   See, e.g., Matta v. Wells Fargo Bank, 2013 U.S. Dist. LEXIS 108197 (C.D. Cal. July 31, 2013)
4   (HOLA "follows the loan" if original lender covered).  This principle makes eminent sense when
5   applied to liabilities and defenses related to the conduct of the originating lender.  Claims which
6   would have been preempted pre-acquisition should remain preempted post-acquisition.  This
7   principle does not, however, support effectively immunizing successor entities for otherwise
8   actionable post-acquisition conduct.  See Penermon, 47 F. Supp. 3d at 995; Narvasa, 2016 U.S.
9   Dist. LEXIS 98991 at *9-10.  For these reasons, the court concludes that preemption does not
10  extend to post-merger or successive conduct by an entity that is not otherwise governed by
11  HOLA.

12   This court must therefore ask whether the alleged violations took place when the banking
13  entity was covered by HOLA.  See Rijhwani, 2014 U.S. Dist. LEXIS 27416 at *7; Narvasa, 2016
14  U.S. Dist. LEXIS at 10.  In this case, the conduct plaintiff complains of is Wells Fargo's handling
15  of plaintiff's requests to assume and modify the loan.  This conduct occurred entirely after the
16  merger by which Wells Fargo acquired the loan.  None of plaintiff's claims involve the inception
17  of the loan or any pre-merger conduct by the FSA.  Accordingly, HOLA does not preempt the
18  claims.

19   Defendant contends that this court must give deference to the opinions of the Office of
20  Thrift Supervision ("OTS") and its predecessor, the Federal Home Loan Bank Board, as the
21  federal agencies charged with regulating FSAs, that HOLA preemption applies to successor
22  financial institutions.  See RJN (ECF No. 14-1), Exhs. 7 & 8.  The cited opinion letters, however,
23  do not address the specific issue of a successor financial institution's civil liability for its own
24  post-acquisition conduct.  Accordingly, deference to the OTS interpretation of the regulations
25  does not require a different result.  See Penermon, 47 F. Supp. 3d at 993-94 (rejecting argument
26  that OTS opinion letter governs preemption where alleged wrongdoing arises from Wells Fargo's
27  post-merger conduct).

28   Defendant also relies on language in the mortgage note and Deed of Trust ("DOT") for the

12

1    proposition that it is contractually entitled to HOLA preemption.  The loan contract and DOT

2    provide that any entity who takes over the original lender's rights or obligations will have all the

3    lender's rights.  See ECF No. 14-1 at 2 (mortgage note), 9-10 (DOT).  Both documents provide

4    that the instruments "shall be governed by and construed under federal law and federal rules and

5    regulations including those for federally chartered savings institutions," id. at 6 (mortgage note),

6    18 (DOT).  This general language does not entitle defendant to HOLA preemption where federal

7    law does not require its application.  HOLA preemption "is not some sort of asset that can be

8    bargained, sold, or transferred."  Gerber v. Wells Fargo Bank, N.A, 2012 U.S. Dist. LEXIS 15860

9    (D. Ariz. Feb. 9, 2012).  As previously explained, federal law requires that the successor lender is

10   entitled to HOLA preemption to the same extent that the original lender was – in defense of

11   claims arising from the conduct of the FSA.  The contract can require no more.

12        Wells Fargo "should not be allowed to hide behind a defense created solely for the

13   [savings association], a non-party, in order to defeat allegations made against the [bank] that are

14   unrelated to any acts of that non-party."  In re Toliver, 464 B.R. 720, 739 (Bankr. E.D. Ky. 2012).

15   Because plaintiff's claims do not arise from the actions of Wachovia or any other FSA, but are

16   based entirely on the post-acquisition conduct of a successor national bank not entitled to HOLA

17   protection for its actions, HOLA preemption does not apply.

18        B.  Defendant's Challenge To "Any Claim Based On A Dispute Regarding Wells Fargo's

19            Right To Enforce The Loan"

20        The FAC alleges in many places that Wells Fargo lacks the right to enforce the home loan.

21   See, e.g., FAC, ECF No. 12, ¶¶ 13-15, 79-81, 89, 110, 117, 126, 137, 178, 181-85, 202-204, 213.

22   Defendant argues that plaintiff lacks standing to challenge its rights under the loan, and that its

23   enforcement rights are undisputable under the terms of the judicially noticeable mortgage note

24   and Deed of Trust.  Defendant contends that Claims Two (unjust enrichment), Three (Fair Debt

25   Collection Practices Act), Seven (seeking cancellation of Deed of Trust), Ten (seeking to quiet

26   title), and Eleven (slander of title) are based entirely on the allegation that the Bank lacks the right

27   to enforce the home loan, and that Claims Four (Real Estate Settlement Procedures Act), Five

28   (Cal. Bus. & Prof. Code § 17200) and Eight (wrongful foreclosure) are based in part on that

1    allegation.  Defendant accordingly moves for dismissal of all those claims.  Motion to Dismiss

2    ("MTD"), ECF No. 15 at 18-20.

3         Rule 12(b)(6) requires the court to consider the elements of a particular claim for relief

4    and then determine whether facts sufficient to establish each element have been pleaded.  The

5    undersigned will proceed to that inquiry on a claim-by-claim basis.  Defendant is correct that the

6    judicially noticed documents establish its status as the lender under the note and beneficiary under

7    the Deed of Trust, and thus its contractual right as a general matter to enforce against the

8    borrower.  The complaint alleges not only that Wells Fargo lacks the power to foreclose in the

9    abstract, however, but that its own conduct – engaging in a lengthy and misleading course of

10   communications with the sole owner of the property regarding her assumption and modification

11   of the loan – precludes it from taking plaintiff's home under the circumstances of this case.

12   Accordingly, the fact that Wells Fargo is the successor to Wachovia does not require dismissal

13   unless that fact is fatally inconsistent with the essential elements of a particular claim.  Surplusage

14   in the complaint, including dubious or even frivolous legal theories, will be disregarded but does

15   not without more support dismissal under Rule 12(b)(6).

16        C.   Sufficiency Of The Allegations To State A Claim For Relief

17             1.   First Claim for Relief – Negligence

18        To state a cause of action under California law for negligence, a plaintiff must allege that

19   (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3)

20   the breach proximately caused the plaintiff's damages or injuries.  Thomas v. Stenberg, 206 Cal.

21   App. 4th 654, 662 (2012).  Defendant argues that plaintiff has failed to allege a duty of care and

22   either a factual or legal basis for the claim.

23        "Whether a duty of care exists is a question of law to be determined on a case-by-case

24   basis. . . .  We start by identifying the allegedly negligent conduct by [defendants] because our

25   analysis is limited to 'the specific action the plaintiff claims the particular [defendant] had a duty

26   to undertake in the particular case.'"  Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App.

27   4th 49, 62 (2013).  Here, interpreting the pro se complaint liberally, the allegedly negligent

28   conduct includes mishandling the loan assumption and modification process by lying to and/or

misleading plaintiff regarding matters including her status as an applicant, failing to maintain accurate and complete records, failing to process the loan assumption and modification as promised, and failing to negotiate in good faith; failing to provide information, prior to initiating a foreclosure sale, about programs for which plaintiff might be eligible; and failing to safeguard plaintiff's confidential information, including the failure to properly hire, supervise and train employees.  FAC, ECF No. 12, at 16-19.

Defendant relies on the proposition that "absent extraordinary and specific facts, a bank does not owe a duty of care to a noncustomer."  Software Design & Application v. Hoefer & Arnett, 49 Cal. App. 4th 472, 478-79 (1996).  Plaintiff's negligence claim, however, like the complaint as a whole, turns in significant part on allegations that Wells Fargo treated plaintiff (albeit inconsistently) like a customer, or at least like an applicant for assumption and modification.  For this reason, the general rule regarding noncustomers does not apply.

Both California and federal courts have held that when a bank accepts an application for a loan modification, it assumes a duty of reasonable care in handling the application.  See, Alvarez v. BAC Home Loans Servicing, LP, 228 Cal. App. 4th 941, 948-49 (2014); Garcia v. Ocwen Loan Servicing, LLC, 2010 U.S. Dist. LEXIS 45375 at *8-10 (N.D. Cal. May 10, 2010); Trant v. Wells Fargo Bank, N.A., 2012 U.S. Dist. LEXIS 98404 at *19-22 (S.D. Cal. July 12, 2012); Rijhwani, 2014 U.S. Dist. LEXIS 27516 at *57-62.  Whether the defendant in this case accepted an application for modification may be a factual dispute for the future.  For present purposes, a liberal reading of the complaint supports an inference that the Bank agreed to review plaintiff's application for an assumption and modification of the loan – or at least that Bank employees led plaintiff to believe that she was under consideration for assumption and modification.

Although a lender is not a fiduciary of its borrowers and owes them no general duty of care, a duty may nonetheless arise where a financial institution's role exceeds the scope of its "conventional role as a mere lender of money."  See Nymark v. Heart Fed. Savings & Loan Ass'n, 231 Cal. App. 3d 1089, 1095-96 (1991); see also Wagner v. Benson, 101 Cal. App. 3d 27, 35 (1980) ("Liability to a borrower for negligence arises only when the lender actively participates in the financed enterprise beyond the domain of the usual money lender.").  Whether

15

a duty of care is owed to a borrower is determined according to a non-exhaustive six factor test. Nymark, 231 Cal. App. 3d at 1098; Osei v. Countrywide Home Loans, 692 F. Supp. 2d 1240, 1249 (E.D. Cal. 2010).  The courts in Alvarez, Garcia, Trant and Rijhwani reached their results by applying this framework, which balances (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to her, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.  See Nymark, 231 Cal. App. 3d at 1098.

The undersigned finds that these factors support a duty of care in the instant case.  First, accepting plaintiff's allegations as true, the contemplated transactions (potential assumption and modification) were plainly intended for her benefit.  Second, the potential harm to her was readily foreseeable: the loss of the opportunity to keep her home.  Third, although the home has not yet been sold, the injury to plaintiff absent success in this lawsuit is certain.[5]  Fourth, there is a direct connection between defendant's alleged conduct and plaintiff's injury.

Regarding the fifth factor, the blameworthiness of defendant's conduct, the Alvarez court noted that a borrower's "ability to protect his own interests in the loan modification process [is] practically nil" and the bank holds "all the cards."  Alvarez, 228 Cal. App. 4th at 949 (quoting Jolley v. Chase Home Finance, LLC, 213 Cal. App. 4th 872, 900 (2013)).  After reviewing the structure and recent history of the mortgage industry, the court concluded that "[t]he borrower's lack of bargaining power, coupled with conflicts of interest that exist in the modern loan service industry, provide a moral imperative that those with the controlling hand be required to exercise reasonable care in their dealings with borrowers seeking a loan modification."  Id.  The court also found that allegations of "dual tracking" – the simultaneous pursuit of modification and foreclosure – further supported a finding of blameworthiness.  The complaint here also includes allegations of dual tracking.

---

[5]  Wells Fargo has voluntarily stayed the foreclosure, and agreed at hearing on the motion that the sale would not take place until 14 days after plaintiff files her objections to these Findings and Recommendations.

The sixth factor, a policy of preventing future harm, is readily satisfied by the existence of state and federal initiatives intended to help homeowners impacted by the home foreclosure crisis. See, e.g., Cal. Civ. Code § 2923.6 (encouraging lenders to offer loan modifications to borrowers in appropriate circumstances); see also www.MakingHomeAffordable.gov (describing the federal "Making Home Affordable Program," which promotes modification opportunities and seeks to avoid foreclosures).  The California courts have noted the state legislature's strong preference for preventing unnecessary foreclosures.  See Jolley, 213 Cal. App. 4th at 903; Alvarez, 228 Cal. App. 4th at 950-51 (detailing provisions of the California Homeowner Bill of Rights).

Because all six factors weigh in plaintiff's favor, the court concludes for present purposes that the complaint alleges facts establishing a duty of care.  Plaintiff has sufficiently alleged a breach of that duty[6] and resulting imminent injury.  Accordingly, the motion to dismiss should be denied as to Claim One.

### 2.  Second Claim for Relief – Unjust Enrichment

Defendant contends that Claim Two must be dismissed because unjust enrichment is not an independent cause of action under California law.  MTD, ECF No. 15 at 32.  There is a split of authority on the question whether unjust enrichment may be maintained as a separate, stand-alone claim.  See Davenport v. Litton Loan Servicing, L.P., 725 F. Supp. 2d 862, 885 (N.D. Cal. 2010) (surveying cases).  Although it is sometimes characterized as a remedy, some California courts take the view that unjust enrichment is "not a cause of action . . . or even a remedy, but rather a principle, underlying various legal doctrines and remedies.  It is synonymous with restitution." McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004) (internal quotation marks and citations omitted); cf. Melchior v. New Line Prod., Inc., 106 Cal. App. 4th 779, 793 (2003) ("The phrase 'unjust enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so.").

////

---

[6]  As described above, plaintiff alleges that the Bank failed to failed to perform a timely review, provided inconsistent and misleading information about requirements and about the status of her application, foreclosed while the application was purportedly in process, and mishandled documents and payments.

However it is characterized, the prevailing view in this district is that unjust enrichment is not an independent cause of action.  See 3W S.A.M. Tout Bois v. Rocklin Forest Prods., Inc., No. 2:10-cv-01070 MCE KJN, 2011 U.S. Dist. LEXIS 11530 (E.D. Cal. Feb. 7, 2011); Foster Poultry Farms v. Alkar-Rapidpak-MP, No. 1:11-cv-00030 AWI SMS, 2011 U.S. Dist. LEXIS 61008 (E.D. Cal. June 8, 2011); Albizo v. Wachovia Mortgage, No. 2:11-cv-02991 AC, 2012 U.S. Dist. LEXIS 55985 (E.D. Cal. April 20, 2012); Randhawa v. Skylux Inc., No. 2:09-cv-02304 WBS DAD, 2012 U.S. Dist. LEXIS 154281 (E.D. Cal. Oct. 26, 2012); Tohumculuk v. H.J. Heniz Co., No. 2:13-cv-0773 WBS KJN, 2013 U.S. Dist. LEXIS 162592 (E.D. Cal. November 14, 2013). The undersigned agrees that unjust enrichment is duplicative of theories for relief already available under other legal doctrines, and therefore adopts this prevailing view.

Because unjust enrichment is not an independent cause of action, Claim Two should be dismissed without leave to amend.  Plaintiff is informed that such dismissal will not bar her from alleging in relation to other claims that defendant obtained unjust benefits from its allegedly wrongful conduct, or from seeking a remedy of restitution.

### 3.   Third Claim for Relief – Fair Debt Collection Practices Act

Defendant contends that plaintiff's claim under the Fair Debt Collection Practices Act ("FDCPA") fails both because Wells Fargo is not a debt collector within the meaning of the statute, and because plaintiff is not a protected consumer.  MTD, ECF No. 15 at 30-31.  Because defendant is correct on the first point, the court need not address the second.

> Congress passed the FDCPA in 1977 with the stated purposes of eliminating "abusive debt collection practices," ensuring "that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged," and promoting "consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  In furtherance of these purposes, the FDCPA bans a variety of debt collection practices and allows individuals to sue offending debt collectors.

Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1207-08 (9th Cir. 2013)

To state a claim under the FDCPA, a plaintiff must allege facts establishing that: (1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a 'debt collector' under the FDCPA; and (3) the

1    defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the

2    FDCPA.  Pratap v. Wells Fargo Bank, N.A., 63 F.Supp.3d 1101, 1113 (N.D. Cal. 2014).  An

3    entity qualifies as a "debt collector" under the statute if (1) its principal purpose is debt collection,

4    (2) it regularly seeks to collect debts owed to another, or (3) its principal purpose is the

5    enforcement of security interests.  See 15 U.S.C. § 1692a(6).  Entities that regularly collect debts

6    owed to themselves do not come within the statutory definition.  Schlegel, 720 F.3d at 1209-10.

7    That includes mortgage holders.  Id.

8         It is well-established that a mortgage lender or other creditor who seeks to recover the

9    security for its loan is not a "debt collector" within the meaning of the FDCPA.  See Hulse v.

10   Ocwen Fed. Bank, FSB, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) ("[The] activity of foreclosing

11   on [a] property pursuant to a deed of trust is not the collection of a debt within the meaning of the

12   [FDCPA]").  Importantly, a debt collector does not include "any person collecting or attempting

13   to  collect any debt owed or due or asserted to be owed or due another to the extent such activity .

14   . . concerns a debt which was not in default at the time it was obtained by such person."

15   Fitzgerald v. PNCBank, 2011 U.S. Dist. LEXIS 43629 (D. Idaho 2011) (quoting 15 U.S.C. §

16   1692a(6)(F)).  To this end, courts — including this court — have concluded that "lenders and

17   mortgage companies are not 'debt collectors' within the meaning of the FDCPA."  Williams v.

18   Bank of America, No. 2:12-cv-2513 JAM AC, 2013 U.S. Dist. LEXIS 65216 (May 7, 2013); see

19   also Cherian v. Countrywide Home Loans, Inc., 2012 U.S. Dist. LEXIS 96823 (D. Idaho 2012);

20   Ines v. Countrywide Home Loans, Inc., 2008 U.S. Dist. LEXIS 55245 (S.D. Cal. 2008); Williams

21   v. Countrywide, 504 F. Supp. 2d 176, 190 (S.D. Tex. 2007) ("Mortgage companies collecting

22   debts are not 'debt collectors.'").  Accordingly, plaintiff's FDCPA claim should be dismissed.

23        Because the allegations of the complaint, plaintiff's exhibits, and the judicially noticed

24   documents related to the loan are all inconsistent with any allegation that Wells Fargo purchased

25   the loan while it was in default, amendment would be futile.  Claim Three should therefore be

26   dismissed with prejudice.

27             4.   Fourth Claim for Relief – Violation of Real Estate Settlement Procedures Act

28        Congress enacted the Real Estate Settlement Procedures Act ("RESPA") to control real

19

1    estate settlement costs by "insuring that consumers throughout the Nation are provided with

2    greater and more timely information on the nature and costs of the settlement process and are

3    protected from unnecessarily high settlement charges caused by certain abusive practices that

4    have developed in some areas of the country."  12 U.S.C. § 2601(a) (1989).  Among other things,

5    RESPA requires loan servicers to respond "after the receipt from any borrower" of a Qualified

6    Written Response ("QWR") for information related to the servicing of a loan.[7]  12 U.S.C. §

7    2605(e).  Plaintiff alleges that she sent Wells Fargo a QWR explaining why she believed the

8    account was in error, and that Wells Fargo failed to reply in violation of RESPA.  FAC, ECF No.

9    12 at ¶¶ 129-131.  Defendant contends that this claim must be dismissed because RESPA creates

10   duties on the part of loan servicers to borrowers only, and plaintiff was not a borrower.  MTD,

11   ECF No. 15 at 30.

12        Defendant is correct that at the time it acquired the loan and at the time plaintiff allegedly

13   sent a QWR, she was not a party to the loan and was thus not a "borrower" within the meaning of

14   RESPA.[8]  This entire lawsuit is about Wells Fargo's allegedly improper thwarting of plaintiff's

15   attempt to assume and modify the loan in order to prevent foreclosure and the loss of her home.

16   As defendant aptly puts it, plaintiff wants to *become* a borrower, but the statute does not create

17   any duties toward individuals who are not already borrowers.

18        This court has found in relation to Claim One that the California common law of

19   negligence permits the recognition of a duty of care arising from defendant's alleged treatment of

20

21   [7]  A QWR is "a written correspondence, other than notice on a payment coupon or other payment
     medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify,

22   the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of
     the borrower, to the extent applicable, that the account is in error or provides sufficient detail to

23   the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(3).

24   [8] The statute does not contain a definition of "borrower," see 12 U.S.C. § 2602 (Definitions), so
     the usual meaning of the term applies.  It is indisputable that plaintiff's ex-husband was the sole

25   borrower on the original loan.  RJN Exh. 1 (fixed rate mortgage note), ECF No. 14-1 at 2.  The
     original Deed of Trust includes a spousal joinder, signed by plaintiff, which expressly provides

26   that the spouse waives all interest in the property and incurs no personal liability under the Note.
     RJN Exh. 2 (Deed of Trust), ECF No. 14-1 at 25.  Although borrower Stephen Woo subsequently

27   transferred title of the property to plaintiff, Woo remained the only person contractually obligated
     on the loan.

28

1  plaintiff as an applicant for assumption and modification.  Statutory duties, however, are not

2  subject to expansive construction by the court based on the circumstances of a given case.

3  Accordingly, the motion to dismiss this claim should be granted.  Because amendment would be

4  futile, leave to amend the RESPA claim is not appropriate.[9]

5              5.   Fifth Claim for Relief – Violation of Bus. & Prof. Code § 17200

6          California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent

7  business act or practice."  Bus. & Prof. Code § 17200.  The statute incorporates other laws and

8  treats violations of those laws as independently actionable unlawful business practices.  Chabner

9  v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  Plaintiff alleges that the

10  same events giving rise to her other claims also violate § 17200.  See FAC, ECF No. 12 at 22-26.

11  Defendant presents a single ground for dismissal: that Claim Five is predicated in part on the

12  untenable proposition that Wells Fargo has no legal right to enforce its rights under the loan.

13  MTD, ECF No. 15 at 18.  Defendant cites to a single, one-sentence paragraph, ¶ 137, in a claim

14  that is set forth in paragraphs numbered 135 through 163, and spanning five pages.  The cited

15  paragraph states in full: "Defendant WELLS FARGO violated Cal. Business & Prof. Code

16  Section 17200 by collecting payments that they lacked the right to collect, and engaging in

17  unlawful business practices by violating FDCPA and RESPA."  FAC, ECF No. 12 at 22, ¶ 137.

18          Defendant provides no argument why this single conclusory allegation, even if it fails to

19  support relief standing alone, requires the dismissal of plaintiff's entire section 17200 claim.

20  Because the moving party has failed to support its motion as to Claim Five, it should be denied.

21              6.   Sixth Claim for Relief – Fraud

22          Defendant contends that the complaint fails to allege facts that support relief for fraud.

23  Defendant argues first that plaintiff has not stated a claim for fraudulent concealment of facts, and

24  second that her claim based on affirmative misrepresentation fails because she has not pled facts

25  _____

26  [9]  The court notes that loan servicers are obligated to respond to QWRs received from "a
   borrower (or an agent of the borrower)."  § 2605(e)(1)(A).  Even if plaintiff were able upon

27  amendment to truthfully allege that she submitted the QWR as an agent for her ex-husband
   Stephen Woo, the servicer's obligation to respond would run to Woo and not to plaintiff.

28  Accordingly, such amendment would fail to cure the defect.

1    showing reliance or damages.  MTD, ECF No. 15 at 25-28.

2          To state a claim for fraud under California law, plaintiff must establish (1)

3    misrepresentation (false representation, concealment or nondisclosure); knowledge of falsity (or

4    "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting

5    damage.  Lazar v. Superior Court, 12 Cal.4th 631,638 (1996).  The Federal Rules of Civil

6    Procedure require that fraud be pleaded with particularity.  Rule 9(b), Fed. R. Civ. P.  "Averments

7    of fraud must be accompanied by the 'who, what when, where and how' of the misconduct

8    charged."  Cooper v. Pickett, 137 F.3d 616, 626 (9th Cir. 1997).  "The plaintiff must set forth what

9    is false or misleading about a statement, and why it is false."  Decker v. GlenFed, Inc. (In re

10   GlenFed. Inc. Sec. Litig.), 42 F.3d 1541, 1548 (9th Cir. 1994).  Moreover, in a fraud action against

11   a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent

12   representations, their authority to speak, to whom they spoke, what they said or wrote and when it

13   was said or written."  Tarmann v. State Farm Mut. Auto Ins. Co., 2 Cal. App. 4th 153, 157 (1991).

14         Plaintiff has, for the most part, identified the individuals with whom she spoke, when she

15   spoke with them, what they told her, and why she believes the representations were false or

16   misleading.  The facts recited in the complaint, as summarized in section II, supra, are more than

17   sufficient to satisfy Rule 9 as to these aspects of the fraud claim.  However, because the FAC fails

18   to adequately identify which of the specific "who," "what" and "when" allegations are

19   incorporated into Claim Six, ECF No. 12 at 26-28, plaintiff must be required to amend.

20         Defendant argues that insofar as the claim rests on fraudulent concealment, it is time-

21   barred.  Defendant's untimeliness theory is based on its isolation of a single allegation (that Wells

22   Fargo withheld information from plaintiff related to the 2008 finalization of Woo's loan) as the

23   sole basis for the claim.  MTD, ECF No. 15 at 26.  Plaintiff, however, alleges a continuing course

24   of false and misleading affirmative statements combined with the withholding of information,

25   which characterized her own direct interactions with the bank from July 2013 until the filing of

26   this lawsuit in April 2016.  Defendant's assertion of the statute of limitations should therefore be

27   rejected.

28         Defendant next contends that it owed no duty of disclosure to plaintiff because she was

22

1   not the borrower.  This is the same argument that has been rejected in the negligence context, and

2   fails for the same reasons here.  Although the duties of disclosure owed by the Bank to plaintiff

3   were not co-extensive with those owed to Woo, the issue in Claim Six is whether defendant

4   deliberately mislead plaintiff to her detriment by its statements and omissions to her.  Plaintiff's

5   status as a non-borrower does not defeat this claim.

6         Finally, defendant argues more convincingly that the complaint fails to adequately plead

7   reliance and damages.  In various places, the complaint states that plaintiff relied on the

8   information provided to her by supplying documents, changing her living arrangements,

9   resubmitting applications and documents when they were misplaced by defendant, and forgoing

10  alternative means for relief.  Actions such as supplying documents and resubmitting paperwork

11  do not constitute detrimental reliance in the fraud context, because they do not incur any legal or

12  financial liability or otherwise lead to cognizable damage.  On the other hand, plaintiff's

13  implication that she moved out of the subject property in reliance on defendant's statements, and

14  was thus rendered ineligible for assumption, could establish detrimental reliance.  However, the

15  court must read between the lines of the complaint to infer this theory.  If plaintiff means to allege

16  that the residency requirement was fraudulently withheld from her until after she vacated the

17  premises, she has failed to allege specific facts establishing that defendant's failure to explain the

18  requirement was made with knowledge that she intended to vacate and intent to cause her to

19  become ineligible for assumption.[10]  Plaintiff also fails to specifically identify the alternate means

20  for relief that she forfeited in reliance on the belief that she was being considered for assumption

21  and modification, and the specifics of the financial or other consequences.  For these reasons,

22  Rule 9 is not satisfied as to reliance and damages.  The claim therefore must be dismissed, but

23  plaintiff should be given an opportunity to amend.

24  ////

25

26  [10]  Plaintiff alleges in Claim Six at ¶ 168: "They waited until the subject property needed to be her
    primary residence [sic], knowing that it was not, to advise her that she was eligible for an

27  assumption only if the property were her primary residence.  However when the property was her
    primary residence, WELLS FARGO falsely told Ms. Davis that she did not qualify inducing her

28  reliance."  FAC, ECF No. 12 at 27.

7.   <u>Seventh Claim for Relief – To Void or Cancel Assignment of Deed of Trust</u>

Defendant argues briefly that all of plaintiff's equitable claims must be dismissed because "plaintiff's failure to tender their outstanding debt precludes equitable relief."  MTD, ECF No. 15 at 31.  This argument is utterly inconsistent with defendant's insistence that plaintiff is not the borrower, which necessarily means that she had no outstanding debt.  This is not the typical foreclosure action brought by a debtor.  Rather, plaintiff is challenging the Bank's alleged machinations in preventing her from being in a position via assumption to take whatever actions were necessary to prevent foreclosure of her home.  "Tender may not be required where it would be inequitable to do so," <u>Onofrio v. Rice</u>, 55 Cal. App. 4th 413, 424 (1997), and plaintiff's allegations suggest that is the case here.

Moreover, several federal courts sitting in California have held that the tender rule applies only in cases seeking to set aside a completed sale, rather than an action to prevent a pending sale.  <u>See</u>, <u>e.g.</u>, <u>Robinson v. Bank of America</u>, 2012 U.S. Dist. LEXIS 74212 (N.D. Cal. May 29, 2012); <u>Vissuet v. Indymac Mortg. Servs.</u>, 2010 U.S. Dist. LEXIS 26241 (S.D. Cal. Mar.19, 2010); <u>Giannini v. American Home Mortg. Servicing, Inc.</u>, 2012 U.S. Dist. LEXIS 12241 (N.D. Cal. Feb.1, 2012).  Other courts have held that the tender rule does not apply when plaintiff alleges that defendant lacked authority to foreclose.  <u>See</u> <u>Subramani v. Wells Fargo Bank, N.A.</u>, 2013 U.S. Dist. LEXIS 156556 (N.D. Cal. Oct. 13, 2013).  Most significantly for this case, it is entirely unclear that the tender rule would apply when plaintiff alleges "dual tracking" – the simultaneous consideration of loan modification and pursuit of foreclosure.  <u>Cf.</u> <u>Mabry v. Superior Court</u>,185 Cal. App. 4th 208, 225 (2010) (finding tender rule inapplicable where plaintiff alleged violation of since-superseded California statute that required consideration of alternatives prior to foreclosure).  Defendant does not address these matters.  For all these reasons, the tender argument fails.

Defendant's stronger argument is that Claim Seven relies entirely on plaintiff's allegation that Wells Fargo lacks the right to enforce the home loan.  MTD, ECF No. 15 at 18.  As discussed above, Wells Fargo's status as successor to the rights of the original lender is established by the

////

1    judicially noticed documents.[11]  Because plaintiff's statement of this cause of action rests on

2    wholesale incorporation of the complaint's previous 176 paragraphs, see FAC, ECF No. 12 at 28,

3    the undersigned cannot readily determine whether the complaint contains factual material that

4    would otherwise support her assertion that the Assignment of the Deed of Trust is void ab initio

5    or voidable for any other reason (or that she has standing to make such a claim, since she was not

6    a party to the Deed of Trust).[12]

7         Claim Seven should therefore be dismissed as inadequately pleaded.  The court is unable

8    to conclude on the present record, however, that "it is absolutely clear that no amendment can

9    cure the defect."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995).  Accordingly, in light

10   of the liberality with which pro se plaintiffs should be provided leave to amend, see id., such

11   leave should be granted.

12            8.  Eighth Claim for Relief – Wrongful Foreclosure

13        Defendant identifies Claim Eight as based partially on the allegation that Wells Fargo

14   lacks the authority to enforce the loan.  MTD, ECF No. 15 at 18.  The complaint asserts numerous

15   grounds for claiming the imminent foreclosure to be wrongful.  Defendant's attack on one such

16   ground, no matter how well taken, does not support dismissal of the entire claim.  Defendant does

17   not identify the elements that plaintiff must plead in order to establish entitlement to relief for

18   wrongful foreclosure under California law, or otherwise present a cogent argument under Rule

19   12(b)(6).

20        As previously noted, the Bank also broadly challenges the general sufficiency of

21   plaintiff's equitable claims on grounds including failure to tender, but does so in cursory fashion

22   that fails to meet its burden as the moving party.  For these reasons, the motion should be denied

23   as to Claim Eight.

24   _____

25   [11]  In assessing the sufficiency of the complaint, the court need not accept as true, legal
     conclusions cast in the form of factual allegations, or allegations that contradict matters properly

26   subject to judicial notice.  See Western Mining Council, 643 F.2d at 624; Sprewell, 266 F.3d at
     988.

27   [12]  Defendant fails to support its motion with any discussion of what a California plaintiff is
     required to plead in order to state an equitable claim for the cancellation of assignment of a deed

28   of trust, so the court does not consider that matter at this time.

1            9.    <u>Ninth Claim for Relief – Breach of Implied Covenant of Good Faith and Fair</u>

2                 <u>Dealing</u>

3        Defendant's one-paragraph argument for dismissal of Claim Nine rests on the proposition

4 that a claim for breach of the implied covenant of good faith and fair dealing depends on the

5 existence of a contract, and plaintiff has no contract with Wells Fargo.  "Plaintiff here is not a

6 party to either the note or the deed of trust, and therefore has no 'rights' under those contracts."

7 MTD, ECF No. 15 at 29.

8        In California, "[e]very contract imposes upon each party a duty of good faith and fair

9 dealing in its performance and its enforcement." . . .  The covenant of good faith finds particular

10 application in situations where one party is invested with a discretionary power affecting the

11 rights of another.  Such power must be exercised in good faith."  <u>Sutherland v. Barclays</u>

12 <u>American Mortgage Corp.</u>, 53 Cal. App. 4th 299, 314 (1997).  "The covenant not only imposes

13 upon each contracting party the duty to refrain from doing anything which would render

14 performance of the contract impossible by any act of his own, but also the duty to do everything

15 that the contract presupposes that he will do to accomplish its purpose."  <u>Id.</u> (quoting <u>Floystrup v.</u>

16 <u>City of Berkeley Rent Stabilization Bd.</u>, 219 Cal. App. 3d 1309, 1318 (1990)).

17        While defendant is correct that the covenant of good faith arising from the note and Deed

18 of Trust exists only between the parties to those contracts (the lender and Stephen Woo), the

19 complaint also suggests that plaintiff may be able to plead facts giving rise to an oral contract

20 with her to consider an application for assumption and modification.  <u>See</u>, <u>e.g.</u>, FAC, ECF 12 at ¶

21 34.  Such a contract could potentially support a claim for breach of the implied covenant of good

22 faith and fair dealing.  The court makes no finding that the allegations of the FAC are sufficient to

23 support an oral contract, but at this stage it is not "absolutely clear that no amendment can cure

24 the defect."  <u>See</u> <u>Lucas</u>, 66 F.3d at 248.

25        Because Claim Nine as pleaded rests entirely on a covenant arising from the note and

26 Deed of Trust, FAC, ECF No. 12 at 30-32, it must be dismissed.  Plaintiff should be permitted an

27 opportunity to amend.

28 ////

1          10. Tenth Claim for Relief – Quiet Title

2          Defendant's argument based on failure to tender do not support dismissal for the reasons

3   previously explained in relation to Claim Seven.

4          Defendant also summarily contends that the quiet title claim is based entirely on the

5   allegation that Wells Fargo lacks authority to enforce the terms of the loan, a proposition that is

6   inconsistent with its documented status as successor to the original lender.  MTD, ECF No. 15 at

7   18.[13]  However, the complaint suggests several potential legal obstacles to foreclosure.  The

8   possibility remains that plaintiff, who is the sole owner of the subject property, may on

9   amendment establish a theory that entitles her to remove the existing cloud on the title – or at

10  least to assume the position necessary to do so.  See Aguilar v. Bocci, 39 Cal. App. 3d 475, 477

11  (1974) (a cloud upon title will persist until the debt on the property is paid).

12         As Claim Ten is presently pleaded, defendant is correct that it rests primarily on the

13  allegation that "these Defendants have no interest in the Subject Property and no right to entertain

14  any rights of ownership including the right to foreclose[…]."  FAC, ECF No. 12 at 32.

15  Accordingly, Claim Ten must be dismissed.  Because the complaint suggests other potential bases

16  for plaintiff's pursuit of quiet title, however, and the court cannot on the present record conclude

17  that amendment would be futile, leave to amend should be granted.

18         11. Eleventh Claim for Relief – Slander of Title

19         For the reasons previously explained, plaintiff's failure to tender does not support

20  dismissal of her equitable claims as defendant urges.

21         Defendant also contends that the claim is defective because based entirely on the

22  allegation that it lacks the right to enforce the loan.  MTD, ECF No. 15 at 18.  While most of the

23  allegations in Claim Eleven involve defendants NBS Default Services and Title 365, neither of

24  whom has appeared, plaintiff also alleges that "[n]one of the Defendants is a trustee, beneficiary

25  or assignee of any beneficiary of any Deed of Trust recorded against the Subject Property."  FAC,

26

27  [13]  Defendant fails to support its motion with any discussion of what a California plaintiff is
    required to plead in order to state a claim for quiet title, so the court does not consider that matter
28  at this time.

ECF No. 12 at 33, ¶ 213.  The court need not accept this allegation as true because, as to Wells Fargo, it is refuted by judicially noticed materials.  See Western Mining Council, 643 F.2d at 624; Sprewell, 266 F.3d at 988.  Accordingly, the motion should be granted as to Claim Eleven.

Defendant presents no discussion of what a California plaintiff is required to plead in order to state a claim for slander of title.  In deciding whether leave to amend is appropriate, the court nonetheless considers the elements of a slander of title claim, which are (1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss.  Manhattan Loft, LLC v. Mercury Liquors, Inc., 173 Cal. App. 4th 1040, 1050-51 (2009).  Plaintiff's slander of title claim appears to be premised upon the recording of false instruments against the subject property by entities other than Wells Fargo.  It appears unlikely that plaintiff could by amendment state a claim against the moving defendant.  But because this claim is so closely related to Claim Ten (quiet title), which may be amended, leave to amend Claim Eleven is also appropriate.  Plaintiff is informed that she is not required to add allegations against Wells Fargo to Claim Eleven in a Second Amended Complaint; she may also expressly omit Wells Fargo from this claim.

### 12. Twelfth Claim for Relief – Promissory Estoppel

Defendant contends that the FAC fails to state a claim for promissory estoppel for three reasons: (1) the complaint does not allege a clear and unambiguous promise not to foreclose; (2) any promise not to foreclose would be unenforceable; and (3) plaintiff has not alleged damages.  MTD, ECF No. 15 at 28-29.[14]

Under California law, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."  Kajima/Ray Wilson v. Los Angeles County Metro. Transp. Auth, 23 Cal. 4th 305, 310 (2000).  To support a promissory estoppel claim, the promise must be "clear and unambiguous in its terms."  Laks v. Coast Fed. Sav. & Loan Assn., 60 Cal. App. 3d 885, 890 (1976).  An offer

---

[14]  Defendant's tender argument also applies to this claim, because the claim is equitable in nature, but is rejected for the reasons previously explained.

1    that is conditional, or that lacks finalized and specific terms, does not meet this standard.  Id. at

2    891.

3         The FAC does not allege that defendant promised to grant assumption and modification,

4    but does allege that plaintiff was assured the Bank would not foreclose on the property while her

5    request was under consideration.  It also alleges plaintiff was led to believe that modification was

6    likely.  Defendant contends that any such statements cannot reasonably have induced reliance in

7    light of the contradictory statements also described in the complaint – including the representation

8    that the home was in active foreclosure status.  Defendants rely here on Granadino v. Wells Fargo

9    Bank, N.A., 236 Cal. App. 4th 411, 418 (2015), in which the court held on summary judgment

10   that the formal denial of plaintiff's application for modification rendered unreasonable any

11   reliance on a prior promise not to move forward with foreclosure.  The facts alleged here are

12   distinguishable, involving a lengthy history of repeatedly contradictory and sometimes ambiguous

13   statements both supporting the alleged promise and negating it.  Defendant is correct, however,

14   that this very ambiguity and history of contradiction is inconsistent with a clear and unambiguous

15   promise and with reasonable reliance.

16        For this reason, Claim Twelve must be dismissed with leave to amend.[15]  Plaintiff's

17   attempt to assert a promissory estoppel claim is consistent with the incipient oral contract theory

18   that the court has identified in the complaint.  In this pro se case, it would be premature to

19   conclude that amendment is futile.

20             13. Thirteenth Claim for Relief – Negligent Misrepresentation

21        Defendant seeks dismissal of plaintiff's negligent misrepresentation claim on the same

22   grounds it seeks dismissal of the cause of action for negligence: lack of a duty of care.  See MTD,

23   ECF No. 15 at 21-25 (addressing negligence and negligent misrepresentation claims together).

24   _____

25   [15]  The court rejects defendant's other challenges to this claim.  Defendant contends that a
     promise to postpone foreclosure would be unenforceable, but this proposition is supported only
26   by an unexplained reference to the statute of frauds, without analysis.  MTD, ECF No. 15 at 29.
     This argument is inadequate to support dismissal.  Regarding damages, plaintiff has alleged inter
27   alia that she vacated the premises based on inaccurate information from defendant, and then was
     told that this rendered her ineligible for the assumption and modification she was pursuing.
28   Given the imminence of foreclosure, these allegations are sufficient.

1    Accordingly, the court adopts its previous analysis of that issue and incorporates it here.  For the

2    same reasons that the motion to dismiss should be denied as to Claim One, <u>supra</u> at pp. 14-17, it

3    should be denied as to Claim Thirteen.

4           14. <u>Fourteenth Claim for Relief – Invasion of Privacy</u>

5           Defendant makes no argument regarding the sufficiency of Claim Fourteen.  The court

6    having concluded that HOLA does not preempt plaintiff's state law claims, there are no grounds

7    for dismissal remaining for consideration.  Accordingly, the motion to dismiss should be denied

8    as to Claim Fourteen.

9           15. <u>Conclusion re Motion to Dismiss</u>

10          For all the reasons set forth above, the undersigned will recommend that Claims Two

11   (unjust enrichment), Three (FDCPA), and Four (RESPA) be dismissed with prejudice; that

12   Claims Six (fraud), Seven (seeking to cancel assignment of the deed of trust), Nine (breach of the

13   implied covenant of good faith and fair dealing), Ten (quiet title), Eleven (slander of title), and

14   Twelve (promissory estoppel) be dismissed with leave to amend; and that the motion to dismissed

15   be denied with regard to Claims One (negligence), Five (Cal. Bus. & Prof. Code § 17200), Eight

16   (wrongful foreclosure), Thirteen (negligent misrepresentation), and Fourteen (invasion of

17   privacy).

18                  PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

19          Plaintiff seeks an injunction preventing the foreclosure sale of the subject property during

20   the pendency of this case.  ECF No. 16.

21   I.     <u>Standards Governing Preliminary Injunctive Relief</u>

22          "The sole purpose of a preliminary injunction is to 'preserve the status quo ante litem

23   pending a determination of the action on the merits.'"  <u>Sierra Forest Legacy v. Rey</u>, 577 F.3d

24   1015, 1023 (9th Cir. 2009) (quoting <u>L.A. Memorial Coliseum Comm'n v. NFL</u>, 634 F.2d 1197,

25   1200 (9th Cir. 1980)).  In evaluating the merits of a motion for preliminary injunctive relief, the

26   court considers whether the movant has shown that "he is likely to succeed on the merits, that he

27   is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities

28   tips in his favor, and that an injunction is in the public interest."  <u>Winter v. Natural Resources</u>

1   Defense Council, 555 U.S. 7, 20 (2008); accord Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127

2   (9th Cir. 2009).

3        Because the Winter test is a balancing test, a stronger showing of one element may offset

4   a weaker showing of another.  Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th

5   Cir. 2011).  "At a minimum, a plaintiff seeking preliminary injunctive relief must demonstrate

6   that it will be exposed to irreparable harm.  Speculative injury does not constitute irreparable

7   injury sufficient to warrant granting a preliminary injunction.  A plaintiff must . . . demonstrate

8   immediate threatened injury as a prerequisite to preliminary injunctive relief."  Caribbean Marine

9   Serv. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) (citations omitted).  A preliminary

10  injunction is appropriate when a plaintiff demonstrates "'serious questions going to the merits'

11  and a hardship balance that tips sharply toward the plaintiff . . ., assuming the other two elements

12  of the Winter test are also met."  Alliance for the Wild Rockies, 632 F.3d at 1132.

13     II.    Discussion

14            A.  Likelihood of Success On The Merits

15       Although it is impossible at this state of the proceedings to predict plaintiff's chances of

16  success, the foregoing discussion of the motion to dismiss demonstrates that plaintiff has

17  presented several non-frivolous claims that deserve to proceed.[16]  While the court cannot

18  conclude that she is likely to prevail, is does conclude with confidence that plaintiff has

19  demonstrated serious questions going to the merits.  This factor therefore weights slightly in

20  plaintiff's favor.

21            B.  Likelihood of Irreparable Harm

22       Absent a preliminary injunction, the subject property will be sold.  There is nothing

23  speculative about this imminent harm, which is both significant and inherently irreparable.

24  Plaintiff is the sole owner of the property, which is the former family residence that she acquired

25  from her ex-husband in their divorce.  A foreclosure sale will permanently deprive plaintiff of this

26

27  [16]  Defendant's opposition to the motion for preliminary injunction, ECF No. 18, largely repeats
    its arguments regarding the sufficiency of plaintiff's claims.  Those matters have been addressed
28  in relation to the motion to dismiss and require no further discussion here.

property.  Because real property is unique, money damages after the fact of sale would not

adequately remedy the harm.  Defendant argues that the property is not currently plaintiff's

residence, and that loss of a rental property is a less significant (or at least more reparable) harm,

but this argument is undercut by plaintiff's allegations that she relinquished residence because of

misleading information provided by defendants.  The property was plaintiff's home when she

initiated communications with defendant regarding her desire to assume and modify the

mortgage.  This factor therefore weighs heavily in plaintiff's favor.

C.  Balance of the Equities

While plaintiff faces a strong probability of irreparable harm if the property is sold, a

preliminary injunction will not prejudice defendant to the same degree.  If Wells Fargo ultimately

prevails, its ability to sell will not have been impaired.  Defendant emphasizes that it is prejudiced

by its inability to collect revenue from the property in the meantime, but that loss is relatively

minor for Wells Fargo while the harm to plaintiff from sale is substantial.  Moreover, defendant

would retain its security interest in the underlying property.  On balance, the equities therefore

favor plaintiff.

D.  The Public Interest

The public interest in preventing improper foreclosures is great.  Since the recent

foreclosure crisis, there has been widespread recognition of the public interest in residential

foreclosure prevention and the regulation of lenders to protect current and prospective mortgage

holders.  Both California and the federal government have taken measures to protect this public

interest by passing legislation such as the state Homeowner Bill of Rights, S.B. 900, Ch. 87(1)(a),

2011-2012 Reg. Sess. (Cal. 2012), and creating assistance programs such as the Home Affordable

Modification Program ("HAMP") (part of the federal Making Homes Affordable program).  See

supra at p. 17.  This strong policy of preventing harm to borrowers and homeowners demonstrates

the significant public interest considerations that weigh in plaintiff's favor here.

Admittedly, it serves no public interest to prevent a party from proceeding with a

foreclosure sale to which it is entitled.  However, there are serious questions in this case whether

Wells Fargo may properly proceed with foreclosure absent good faith and transparent

1   consideration of the property-owner's desire to assume and modify the loan.  On balance, the

2   public interest lies in plaintiff's favor.

3          E.  Conclusion

4          For all these reasons, it is appropriate to preserve the status quo ante litem pending

5   resolution of the case. Because the Winter factors weigh in plaintiff's favor, the undersigned will

6   recommend that Wells Fargo be enjoined from selling the subject property during the pendency

7   of this action.

8     III.    Security

9          Federal Rule of Procedure 65(c) provides that a preliminary injunction may be issued

10  "only if the movant gives security in an amount that the court deems proper to pay the costs and

11  damages sustained by any party found to have been wrongfully enjoined or restrained."

12  Defendant contends that if an injunction issues, plaintiff should be required to post a bond of at

13  least $68,940.  ECF No. 18 at 24.  Defendant arrives at this figure by estimating the fair rental

14  value of the property and the rate of return on the current value of the property.  Id. at 25-26.

15  Plaintiff seeks a waiver of the bond requirement.  ECF No. 16 at 14.

16         Rule 65(c) invests the district court with discretion as to the amount of security required,

17  if any.  Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003) (quoting Barahona-Gomez v.

18  Reno, 167 F.3d 1228, 1237 (9th Cir. 1999)); Governing Council of Pinoleville Indian Community

19  v. Mendocino County, 684 F. Supp. 1042, 1047 (N.D. Cal. 1988) (citing People of California v.

20  Tahoe Regional Planning Agency, 766 F.2d 1319, 1325-26 (9th Cir.1985)) ("[C]ourts have

21  discretion to excuse the bond requirement . . . .")   The court finds that defendant is adequately

22  protected by its security interest in plaintiff's property.  See Jorgensen 320 F.3d at 919 ("The

23  district court may dispense with the filing of a bond when it concludes there is no realistic

24  likelihood of harm to the defendant from enjoining his or her conduct."); see also Ticketmaster

25  L.L.C. v. RMG Technologies, Inc., 507 F. Supp. 2d 1096, 1116 (C.D. Cal. 2007) ("A bond may

26  not be required, or may be minimal, when the harm to the enjoined party is slight or where the

27  movant has demonstrated a likelihood of success.")

28         Moreover, it is unclear whether plaintiff has the financial resources to pay the requested

33

1    bond.  "The court has discretion to dispense with the security requirement, or to request mere

2    nominal security, where requiring security would effectively deny access to judicial review."

3    People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Planning Agency, 766 F.2d 1319,

4    1325 (9th Cir. 1985), amended, 775 F.2d 998 (9th Cir. 1985); see also Taylor-Failor v. County of

5    Hawaii, 90 F. Supp. 3d 1095, (D. Haw. 2015) (bond waived where "[p]laintiffs are individuals of

6    limited financial means and there is significant public interest underlying this action"); V.L. v.

7    Wagner, 669 F. Supp. 2d 1106, 1123 (N.D. Cal. 2009) (bond waived where plaintiffs were

8    indigent).  Defendant's request for a $68,940 bond was presented in its opposition to plaintiff's

9    motion, and plaintiff filed no reply.  No information about plaintiff's financial circumstances is

10   before the court.  Accordingly, the court is unable to determine whether a bond would be beyond

11   plaintiff's means and thus effectively deprive her of access to judicial review.

12        Waiver of bond is nonetheless appropriate in light of defendant's ongoing security interest

13   in the property, which is sufficient protection against losses.  Accordingly, the undersigned will

14   recommend that the security requirement be excused.

15                                CONCLUSION

16        For the reasons explained above, IT IS HEREBY ORDERED as follows:

17   1.  Defendant Wells Fargo shall extend the present de facto stay of foreclosure sale until the

18        assigned district judge rules on these Findings and Recommendations;

19   2.  Promptly upon the district judge's ruling, the matter will be set for a mandatory court

20        settlement conference.

21        Further, IT IS HEREBY RECOMMENDED that:

22   1.  Defendant's Motion to Dismiss, ECF No. 15, be GRANTED IN PART AND DENIED IN

23        PART as follows:

24        a.  GRANTED as to Claims Two (unjust enrichment), Three (FDCPA), and Four

25             (RESPA), which should be dismissed with prejudice;

26        b.  GRANTED as to Claims Six (fraud), Seven (seeking to cancel assignment of the deed

27             of trust), Nine (breach of the implied covenant of good faith and fair dealing), Ten

28             (quiet title), Eleven (slander of title), and Twelve (promissory estoppel), which should

be dismissed with leave to amend; and

    c.  DENIED as to Claims One (negligence), Five (Cal. Bus. & Prof. Code § 17200), Eight (wrongful foreclosure), Thirteen (negligent misrepresentation), and Fourteen (invasion of privacy);

2.  Plaintiff's Motion for a Preliminary Injunction, ECF No. 16, be GRANTED; defendant Wells Fargo enjoined from proceeding with the foreclosure sale of the subject property until resolution of the case or further order of the court; and the bond requirement, Fed. R. Civ. P. 65(c) waived.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 2, 2016

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

35